2008 WY 5

**Cleo COOPER, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**Nos. S–07–0018, S–07–0049.**

Supreme Court of Wyoming.

Jan. 18, 2008.

 

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; and Kirk A. Morgan, Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Cathleen D. Parker, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] After trial, a jury convicted Cleo Cooper (Cooper) of two counts of forgery, one count of obtaining goods by false pretenses, and one count of unlawful use of credit card. Cooper argues on appeal that the district court should not have admitted the testimony of the handwriting expert, and that the prosecution committed misconduct in its closing. We affirm.

## ISSUES

[¶ 2] Cooper sets forth two issues on appeal:

1. Did the trial court abuse its discretion when it allowed the testimony of a handwriting expert whose training and education consisted primarily of one two-week course, and whose testimony was not based on a reliable application of the approved methodology?

2. Did the cumulative effect of several acts of prosecutorial misconduct during closing arguments prejudice [Cooper] and deny him of a fair trial?

## FACTS

[¶ 3] In July of 2005, American Express issued a credit card to Henry Clark, mailing it to his residence at 1705 East 15th Street in Casper. However, Mr. Clark had not requested an American Express card. Nevertheless, someone else reported the first card as not having been received, and requested American Express to send a second card to another address in Casper, 1144 Boxelder Street. This is Cooper's address.

[¶ 4]   The second American Express card sent out in Henry Clark's name was activated on July 27, 2005.  That same day, Cooper used the card to purchase $1,200.00 worth of prepaid credit cards, a prepaid phone card worth $212.03, and a soda at Loaf 'N Jug # 104 in Casper.  The very next day, on July 28, 2005, Cooper visited another Loaf 'N Jug (# 102) in Casper, and used Henry Clark's credit card to buy several small items.

[¶ 5]   Using surveillance videos, Loaf 'N Jug employees created still pictures of the purchases at issue.  The times on the videos were coordinated with the times on cash register receipts.  As a result of the investigation, Cooper was charged on December 12, 2005, with two counts of forgery under Wyo. Stat. Ann. § 6–3–602(a)(ii), one count of obtaining goods by false pretenses under Wyo. Stat. Ann. § 6–3–407(a)(i), and one count of unlawful use of a credit card under Wyo. Stat. Ann § 6–3–802(a)(b)(i).

[¶ 6]   Prior to trial, Cooper filed a *Motion in Limine* to exclude testimony from the State's document examiner, Casper Police Officer Chris Reed, but after a hearing on the motion, the court ruled that Officer Reed would be allowed to testify.  During trial, Cooper was identified by the Loaf 'N Jug employees who assisted Cooper in the transactions.  Officer Reed also testified that, although she could not conclude that Cooper signed the credit card receipts, she could conclude that the receipts were all signed by the same person.

[¶ 7]   The jury found Cooper guilty on all four counts.  After merging the false pretenses and unlawful use convictions into the forgery convictions for purposes of sentencing, two consecutive sentences of 7 to 10 years were imposed.  This appeal followed.

## DISCUSSION

### *Expert Testimony*

[¶ 8]   In his first issue on appeal, Cooper faults the district court for allowing Officer Chris Reed, a handwriting examiner for the Casper Police Department, to testify at trial.  The State contends that the expert's testimony was properly admitted.

[¶ 9]   A decision to admit or reject expert testimony rests solely within the discretion of the district court and is not disturbed on appeal absent a clear showing of an abuse of discretion. *Williams v. State,* 2002 WY 184, ¶ 5, 60 P.3d 151, 153–154 (Wyo. 2002).

[¶ 10]   When reviewing matters pertaining to the admission of testimony of expert witnesses, we look to the standard this Court adopted in *Bunting v. Jamieson,* 984 P.2d 467 (Wyo.1999).  In that case, this Court adopted the reasoning used by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which has been further clarified as follows:

> The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable.  Our opinion in *Joiner* [*General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)] makes clear that a court of appeals is to apply an abuse-of-discretion standard when it "review[s] a trial court's decision to admit or exclude expert testimony."  522 U.S. at 138–39, 118 S.Ct. 512, 139 L.Ed.2d 508.  That standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion.... Thus, whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.

*Kumho Tire Company, Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999).  "In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." *Campbell v. Studer,* 970 P.2d 389, 392 (Wyo.1998).

> " [D]ecisions of the trial court with respect to the admissibility of evidence are entitled to considerable deference and,

as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal.'" It is also well established that a district court judgment may be affirmed on any proper legal grounds supported by the record. However, where the law imposes a duty on the district court to make findings on the record, we will not speculate as to the reasons for the decision.

*Bunting*, 984 P.2d at 470 (quoting *English v. State,* 982 P.2d 139, 143 (Wyo.1999)).

A qualified expert witness may testify about scientific, technical, or specialized knowledge if such testimony will help the jury understand the case. W.R.E. 702. This court has adopted the federal *Daubert* model imposing gatekeeping responsibilities on trial courts deciding whether scientific or technical expert testimony is admissible. See *Bunting v. Jamieson,* 984 P.2d 467, 471 (Wyo.1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–93, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993)). In doing so, however, we did not "abandon our own precedent regarding the admissibility of expert testimony." *Bunting,* 984 P.2d at 471. Under the *Daubert* model, the trial court must first determine whether the expert's methodology is reliable; then the court must determine whether the proposed testimony "fits" the facts of the particular case. Id. A district court's decision to admit or reject expert testimony is a decision solely within that court's discretion. *Seivewright v. State,* 7 P.3d 24, 29 (Wyo.2000); *Springfield v. State,* 860 P.2d 435, 438 (Wyo.1993); *Betzle v. State,* 847 P.2d 1010, 1022 (Wyo. 1993).

*Williams v. State,* 2002 WY 184, ¶ 5, 60 P.3d 151, 153–54 (Wyo.2002).

[¶ 11] In light of the standard elicited above, we begin with a more detailed look at Cooper's claim. Specifically, he argues that Officer Reed lacked expertise as a handwriting expert, and insists that by admitting her testimony, the district court denied him a fair trial, necessitating reversal of all his convictions. The State disagrees, and in support of its argument points to the record and the "uncontroverted testimony" showing that Cooper completed all three fraudulent transactions.

■ [¶ 12] We must determine whether or not the district court appropriately applied a *Daubert* analysis in this case. In the first prong of *Daubert,* there are four non-exclusive factors utilized for guiding a trial court in its inquiry into the reliability of proffered expert testimony:

1. Whether the theory or technique in question can be and has been tested;

2. Whether it has been subjected to peer review and publication;

3. The known or potential rate of error for the utilized theory or technique along with the existence and maintenance of standards controlling the applicable process; and

4. The degree of acceptance within the relevant scientific community.

*Bunting,* 984 P.2d at 472. *Bunting* also discussed additional factors that may be utilized by a trial court in fulfilling its gatekeeping function including:

1. The experience and specialized expertise of the proffered expert;

2. Whether or not that expert is testifying about matters occurring "naturally and directly" out of research conducted independent of litigation; and

3. Any "non-judicial" utilization of the expert methodology in question.

*Id.*

[¶ 13] In this case, Cooper contends, as he did in his motion in limine before trial, that Officer Reed was not qualified, and that her testimony was not the product of reliable application of approved methods because she failed to take notes or provide any documentation whatsoever that would act as a foundation for her opinion. Cooper complains that the officer's only training on document examination was an 80–hour course she attended in 2000, and furthermore, that she has no certifications or licenses in document examination. In fact, at the liminal hearing prior to trial, Cooper's own expert testified that the officer was not qualified to testify as a handwriting expert.

[¶ 14] In countering Cooper's claims, Officer Reed testified both during the motion hearing and at trial regarding the methodology or scientific technique used in examining the questioned documents in this case. She testified that her work is tested and subjected to peer review. Furthermore, she explained the potential error rates associated with the methodology and that the methodology is accepted within the community of forensic document examiners. Also, the officer testified that the methodology used was the same method accepted and utilized by the American Board of Forensic Documents Examiners and other experts in the scientific field. Even Cooper's expert conceded that the methodology used was proper.

[¶ 15] Officer Reed also testified with respect to her qualifications. She completed an 80–hour handwriting analysis training course conducted by the United States Secret Service and has over five years of practical analysis encompassing at least 100–150 documents. After the officer's testimony, the district court made specific findings, excerpted in pertinent part below:

1) Officer Reed's expert testimony was reliable and relevant;

2) The document examination fits the facts of the particular case;

3) The technique was valid for evaluating questioned documents;

4) The technique had been subject to peer review and publication;

5) There was a known or potential rate of error for utilizing the technique;

6) It was accepted within the specific testing community; and

7) Any challenges to Officer Reed's use of standard operating procedures and ability to form an opinion can be addressed on cross-examination.

[¶ 16] We are confident that under the *Daubert* model, the trial court properly determined that Officer Reed's methodology was reliable and, subsequently, that her testimony fit the facts of this case. Accordingly, we conclude that the court's decision to admit Officer Reed's testimony in this instance was not an abuse of discretion.

### Prosecutorial Misconduct

[¶ 17] Next, Cooper claims that his convictions should be reversed because of prosecutorial misconduct that allegedly occurred during closing arguments. Cooper argues first that the prosecutor incorrectly stated that Cooper admitted to being present in the stores, and second that the prosecutor improperly stated that Detective Tina Tweedy received journals/logs of certain credit card transactions and improperly emphasized that the journals related to a separate crime. In response, the State contends that, when viewed in their proper context, the prosecutor's comments were not prejudicial.

[¶ 18] In reviewing claims of prosecutorial misconduct, we have previously stated:

Prosecutorial misconduct "has always been condemned in this state." *Earll v. State*, 2001 WY 66, ¶ 9, 29 P.3d 787, [789–90] (Wyo.2001) (quoting *Valerio v. State*, 527 P.2d 154, 156 (Wyo.1974)). Whether such misconduct has been reviewed on the basis of harmless error, W.R.Cr.P. 52(a) and W.R.A.P. 9.04, or on the basis of plain error, W.R.Cr.P. 52(b) and W.R.A.P. 9.05, this Court has focused on whether such error affected the accused's "substantial rights." The accused's right to a fair trial is a substantial right. "Before we hold that an error has affected an accused's substantial right, thus requiring reversal of a conviction, we must conclude that, based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused." *Earll*, ¶ 9, [29 P.3d at 789–90].

[¶ 19] *Williams v. State*, 2002 WY 136, ¶ 21, 54 P.3d 248, 254 (Wyo.2002) (some citations omitted). This Court has also recognized the difficulty in determining what constitutes impermissible prosecutorial conduct:

The question of the propriety of a given statement is not one that can be decided by reference to a judicial checklist of improper words or prohibited phrases to determine if error is present. Of necessity, each statement must be considered in the

context in which it was made and in the context of the evidence produced at trial. *Barela v. State*, 787 P.2d 82, 83 (Wyo.1990).

[¶ 20] Claims of prosecutorial misconduct are settled by reference to the entire record and hinge on whether or not the defendant's case has been so prejudiced as to constitute the denial of a fair trial. *English v. State*, 982 P.2d 139, 143 (Wyo.1999) (citing *Gayler v. State*, 957 P.2d 855, 860 (Wyo. 1998)). The propriety of any comment within a closing argument is judged "in the context of the prosecutor's entire argument, considering the context of the statements and comparing them with the evidence produced at the trial." *Wilks v. State*, 2002 WY 100, ¶ 26, 49 P.3d 975, 986 (Wyo.2002) (citing *Burton v. State*, 2002 WY 71, ¶ 11, 46 P.3d 309, 313 (Wyo.2002)). The burden of proving prejudicial error rests with Cooper. *Wilks*, ¶ 26, 49 P.3d at 986; *see also Taylor v. State*, 2001 WY 13, ¶ 19, 17 P.3d 715, 722 (Wyo. 2001).

[¶ 21] Because Cooper did not object at trial to the prosecutor's alleged misconduct, the standard of review is plain error. That standard requires first, that the record must be clear as to the incident which is alleged as error. Second, the party claiming the error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove a substantial right has been denied him and, as a result, he has been materially prejudiced. *Wilks*, ¶ 7, 49 P.3d at 981.

[¶ 22] With these ideas in mind, we turn to the comments with which Cooper takes issue. First, Cooper claims the prosecutor misstated that Cooper had admitted to being in the stores. The prosecutor said, "Ladies and gentleman, he's in the store. They've said that." This statement, however, is immediately followed by a discussion of testimony from the store clerks. The prosecutor's comments to "they" could reasonably relate to the multiple witnesses that identified Cooper, not to Cooper himself, especially

because Cooper exercised his right not to testify. Furthermore, even though Cooper never admitted to being present in the stores, the theory of defense jury instruction and Cooper's closing argument alluded to Cooper's presence in the stores. First, the theory of defense instruction reads, "It is the defendant's theory of the case and position that merely being present at the scene of a crime is not sufficient . . . ." [1] Second, in closing, Cooper's own counsel implies that Cooper was in the stores when he stated, "[M]aybe she didn't want him to see that that time was actually accurate because that would put Cleo Cooper in that store at a different time and would make it impossible for him to be the person that signed those credit card receipts."

[¶ 23] Given the magnitude of the evidence against Cooper, Cooper's counsel's remarks, and the prosecutor's relatively benign reference to "they," there seems to be no reasonable probability that the prosecutor's comments adversely affected the outcome of Cooper's trial.

[¶ 24] Cooper's next claim of misconduct is that the prosecutor misrepresented Detective Tweedy's testimony when the prosecutor made the following statement: "They talked about these electronic journals and how the detective didn't pick them up, but they were given to her. What did the detective tell you, ladies and gentleman? That was a separate crime." In response to Cooper's claim, the State acknowledges that Detective Tweedy had not reviewed certain of the credit card journals. However, the State insists this was a minor, harmless misstatement in closing and contends that no misconduct occurred. Even if it did occur, it does not rise to prejudicial plain error given the evidence of guilt.

[¶ 25] Looking more closely at the testimony in question, it is clear on the record that Cooper called Detective Tweedy in his case in chief and asked her about the credit card journals. The officer stated that she had not seen the journals because they

---

1. Cooper claims, in passing, that the State mischaracterized the Theory of the Case jury instruction as an admission that Cooper was present in the stores. We find nothing in the record that supports this contention, and without further argument or support by Cooper, we give this sideline argument no credence.

were involved in a "different case." In closing, the prosecution attempted to explain that Detective Tweedy had not seen the journals because they were related to a different case. The prosecutor's statements, then, when viewed in the context in which they were made, did not transgress the line of permissible argument. Indeed, the purpose of closing argument is to give both the prosecution and defense counsel the opportunity to explain the significance of the evidence and how it should be viewed. *Jeschke v. State,* 642 P.2d 1298, 1302 (Wyo.1982). In presenting closing argument, the prosecutor is entitled to comment on the evidence and to draw reasonable inferences from it in order to assist the jury in its fact-finding function. *McLaughlin v. State,* 780 P.2d 964, 968 (Wyo. 1989). Simply put, that is what the prosecutor did in this instance. Notwithstanding a momentary inaccuracy, the record provides no support for a claim that the comments were a purposeful attempt to inflame or mislead the jury. There is also no evidence on the record that Cooper was materially prejudiced by the comments, and Cooper has not, therefore, satisfied the second prong of the plain error analysis because he has not shown a transgression of a clear and unequivocal rule of law.

## CONCLUSION

[¶ 26] The trial court did not abuse its discretion by allowing the testimony of handwriting expert Officer Reed. Furthermore, the prosecutor did not commit misconduct in his closing argument because the statements, when taken in context, were appropriate and did not prejudice Cooper. Affirmed.