# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 114

APRIL TERM, A.D. 2013

September 27, 2013

CARLA STALCUP,

Appellant
(Defendant),

v.                                                    S-12-0232

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
> Office of the State Public Defender:  Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*
> Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Jeffrey Pope, Assistant Attorney General.  Argument by Mr. Pope.

*Before KITE, C.J., and HILL, VOIGT, BURKE, JJ., and SANDERSON, D.J.*

*KITE, C.J., delivers the opinion of the Court; HILL, J., delivers an opinion concurring in part and dissenting in part, with whom BURKE, J., joins.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1] A jury found Carla Stalcup guilty of aggravated vehicular homicide while driving under the influence of alcohol, a felony, and two related driving under the influence (DUI) misdemeanors. She appeals the convictions and sentence, claiming the district court improperly refused to allow her to call an expert witness to testify concerning her theory of defense, incorrectly answered a jury question and imposed an illegal sentence. We conclude the district court erred in not allowing Ms. Stalcup's expert witness to testify concerning her theory of defense to the aggravated vehicular homicide charge. We reverse that conviction and remand for a new trial. We further conclude the district court erred when it entered convictions and imposed sentences on two alternative DUI counts. We reverse those convictions and remand for entry of a new judgment and sentence convicting Ms. Stalcup of one violation of Wyo. Stat. Ann. § 31-5-233 (LexisNexis 2011) and imposing one sentence.

## ISSUES

[¶2] Ms. Stalcup presents the following issues for this Court's consideration:

     1.     The district court abused its discretion when it prohibited her from calling an expert witness to testify in her defense;

     2.     The district court committed reversible error when it incorrectly answered a jury question presented during deliberations; and

     3.     The sentence is illegal because the district court entered separate convictions and sentences on the DUI counts, which were the same criminal act and charged in the alternative.[1]

The State asserts the district court committed no error.

## FACTS

[¶3] On May 24, 2011, the Laramie County district attorney filed an information charging Ms. Stalcup with aggravated vehicular homicide in violation of Wyo. Stat. Ann. § 6-2-106 (b)(i) (LexisNexis 2011) and driving under the influence of alcohol to an extent rendering her incapable of safely driving in violation of § 31-5-233(b)(iii)(A).

---

[1] Ms. Stalcup's brief contains an additional issue concerning a discrepancy between the district court's oral pronouncement of the sentence in which it ordered the DUI sentences to be served concurrently with the aggravated vehicular homicide sentence and the written judgment in which it ordered them to be served consecutively. This issue was resolved when the district court entered an amended judgment and sentence making the sentences concurrent.

(LexisNexis 2011). The affidavit of probable cause attached to the information alleged that on May 13, 2011, Ms. Stalcup was driving a vehicle eastbound out of Cheyenne, Wyoming on WY-210 (Happy Jack Road) when the vehicle left the highway and rolled.[2] Ms. Stalcup was ejected from the vehicle. A passenger, Matthew Lorenz, was partially ejected through the sun roof and died at the scene.

[¶4] Wyoming Highway Patrol troopers smelled alcohol on Ms. Stalcup and Mr. Lorenz and found an open bottle of alcohol in the vehicle. Various witnesses told the troopers that Ms. Stalcup had admitted she was driving at the time of the crash. Upon learning that Mr. Lorenz was dead, Ms. Stalcup also made statements to the effect that she had killed him. When questioned at the hospital after the crash, Ms. Stalcup said that she and Mr. Lorenz were driving to the Bunkhouse Bar & Grill on Happy Jack Road for dinner, an argument ensued and they had turned around to go back to Cheyenne when the crash occurred. She said she did not remember anything about the crash itself.

[¶5] Prior to trial, Ms. Stalcup informed the State and the district court that she intended to call her therapist to testify as an expert witness concerning his treatment of her and use of eye movement desensitization and reprocessing (EMDR) therapy. She also indicated she intended to call a certified EMDR therapist to lay the foundation for her therapist's testimony. The gist of the testimony was that through the therapy, Ms. Stalcup was able to recall events prior to the crash that she had not remembered when questioned at the hospital. The State moved to exclude the expert testimony.

[¶6] Several days before trial began, the State filed an amended information to add an alternative count of misdemeanor DUI under § 31-5-233(b)(i), which makes it unlawful to drive with a blood alcohol content of 0.08% or more. Thus, at the time of trial, Ms. Stalcup was charged with felony aggravated vehicular homicide and two alternative misdemeanor DUI offenses.

[¶7] At trial, Ms. Stalcup's defense was that she did not cause the crash and Mr. Lorenz's resulting death. She intended to show that due to her injuries, the shock from being thrown from the vehicle, and the trauma of learning that Mr. Lorenz was dead, she was unable to remember immediately following the crash what had happened. She claimed that over time and with the help of her therapist and EMDR therapy, however, she was able to recall that Mr. Lorenz grabbed her arm, causing the vehicle to swerve off the highway and roll.

[¶8] On the second day of trial, out of the jury's presence, Ms. Stalcup attempted to qualify Janice Schaad as an expert in EMDR therapy. After questioning by defense

---

[2] The affidavit identifies Ms. Stalcup as "Carla Young," which apparently was the name on her driver's license at the time of the accident. Young was Ms. Stalcup's married name which she stopped using after her divorce.

counsel and the State, the district court ruled that it would not allow Ms. Schaad to testify concerning EMDR therapy. She was allowed to testify generally concerning the effects of trauma. Defense counsel also sought Ms. Schaad's testimony concerning the human brain's ability to repress memory as a protective mechanism. Upon the State's objection, the court declined to allow the testimony.

[¶9] After Ms. Schaad's testimony, defense counsel called Ms. Stalcup's psychologist to testify concerning his treatment of her after the crash and Mr. Lorenz's death. In accordance with the district court's ruling concerning Ms. Schaad's testimony, defense counsel did not question the psychologist about his use of EMDR therapy in treating Ms. Stalcup.

[¶10] Ms. Stalcup testified in her own defense. She stated that after the crash, she was unable to remember what had happened just before it. She testified that months later, however, after her therapist began using EMDR therapy during her treatment, she was able to recall what happened. Specifically, she was able to recall Mr. Lorenz yelling at her to stop the car and grabbing her arm when she did not comply. The next thing she remembered was she had been thrown out of the car and Anne Coker, a friend of her daughter's, was there. Ms. Coker testified that she and some friends were driving to the Bunkhouse and came upon the crash scene before any emergency vehicles arrived. She testified that she thought she recalled Ms. Stalcup telling her at the crash scene that Mr. Lorenz had grabbed the wheel.

[¶11] At the close of the evidence, the district court instructed the jury and provided it with the verdict form. The verdict form required the jury to determine whether Ms. Stalcup was guilty or not guilty of aggravated homicide by vehicle, driving under the influence of alcohol to a degree rendering her unable to drive safely and driving under the influence of alcohol with a BAC of .08%. In contrast to the amended information the State had filed, the verdict form did not treat the DUI charges as alternatives.

[¶12] During deliberations, the jury sent a number of questions to the court, including the following: "Can we try the fact that neither wore a seat belt even though it was not brought up by either side?" The district court indicated to counsel that it intended to answer the question simply "no" or instruct the jury that it "may not consider use or nonuse of a seat belt by the defendant or the victim." Defense counsel objected and asked the court to instruct the jury that it could not answer the question and to rely solely on the jury instructions. Over defense counsel's objection, the district court answered the question simply, "No."

[¶13] After further deliberations, the jury returned a verdict finding Ms. Stalcup guilty of all three charges. At the subsequent sentencing hearing, the district court orally ordered Ms. Stalcup to serve four to eight years for the aggravated vehicular homicide conviction, and six months for each DUI conviction with the latter convictions to merge and be

3

served concurrently with the homicide sentence. The district court's written judgment and sentence, however, ordered the DUI and homicide sentences to be served consecutively. Ms. Stalcup timely appealed from the judgment and sentence. After the appeal, the district court entered an amended judgment and sentence consistent with its oral ruling that the DUI sentences were to be served concurrently with the aggravated vehicular homicide sentence.

## DISCUSSION

### 1. Expert Witness Testimony

[¶14] On the second day of trial, outside the presence of the jury, defense counsel sought to qualify Ms. Schaad as an expert in EMDR therapy. He advised the district court that the purpose of her testimony would be to inform the jury that after a traumatic event, a person can block memories of the event; through EMDR therapy, the person can recall memories that were previously blocked. Defense counsel further advised that he intended Ms. Schaad to testify generally concerning the use of EMDR therapy in treating trauma and then intended to call Ms. Stalcup's therapist to testify specifically about his use of EMDR therapy in treating her. Defense counsel expressly informed the district court that Ms. Schaad could not testify as to the truth of memories allegedly recalled through EMDR therapy; rather, the purpose of her testimony was to lay the foundation for EMDR therapy as an accepted therapeutic technique that may lead to memory recall.

[¶15] With this introduction, Ms. Schaad testified that she is a consultant, educator and psychotherapist with a primary focus on working with trauma through EMDR therapy. She testified that she has worked as a psychotherapist and educator since 1984 and has used EMDR therapy in her practice on a daily basis since she became certified in the technique in 2002. She testified that she has used EMDR with approximately 600 patients and has instructed other therapists in the use of EMDR since 2005.

[¶16] Ms. Schaad testified that during traumatic events, such as car accidents or the loss of a loved one, the brain often blocks difficult memories. EMDR therapy works with memory networks in the brain to jump start memory that the brain has repressed when overwhelmed by a traumatic event. She testified that EMDR therapy is recognized and used by the American Psychological Association (APA), the Department of Veterans' Affairs (VA) and the Department of Defense (DOD) as being effective in treating trauma. Ms. Schaad further testified that the APA declared EMDR therapy to be a best practice ("the gold standard of excellence"), meaning it has been shown through research to be an effective, efficient and reliable technique for working with victims of trauma.

[¶17] On cross examination by the State, Ms. Schaad testified that memory recall is not the purpose of EMDR; rather, its purpose is to help patients resolve traumatic events and feelings. In response to the prosecutor's question whether she was an expert in memory

4

recall, Ms. Schaad responded that she did not know what makes a memory recall expert, but that as a psychotherapist she deals with memory recall every day. She also testified that neither she nor anyone else in her field could say whether memories recalled during EMDR therapy are accurate. Additionally, she testified that she did not know whether the reliability of memory recalled during EMDR therapy had been subjected to peer review. Upon further questioning by defense counsel, Ms. Schaad testified that although EMDR is not specifically designed to induce memory recall, memory may be recalled through EMDR therapy.

[¶18]  After Ms. Schaad's testimony, the district court ruled she would not be permitted to testify concerning EMDR therapy. Ms. Stalcup contends the district court's ruling violated her constitutional right to present a defense. She further claims the district court abused its discretion when it prohibited the EMDR testimony on the ground that it was inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and W.R.E. 702, 401 and 403. We review her claim that her constitutional right was violated *de novo*. *Bruyette v. State*, 2011 WY 99, ¶ 9, 253 P.3d 512, 514 (Wyo. 2011). The issue of whether the evidence was properly excluded, however, is reviewed for abuse of discretion. *Smith v. State*, 2009 WY 2, ¶ 35, 199 P.3d 1052, 1063 (Wyo. 2009). A trial court abuses its discretion when it could not have reasonably concluded as it did. *Id*.

[¶19]  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'" *Hannon v. State*, 2004 WY 8, ¶ 63, 84 P.3d 320, 346 (Wyo. 2004), quoting *Crane v. Kentucky*, 476 U.S. 683, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986).

> [A]n essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence . . . when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing."

*Id*.

[¶20]  In *Hannon*, the defendant claimed his confession was not voluntary. In support of this defense, he sought to present expert testimony of his low IQ, lack of verbal skills and tendency to acquiesce with authority figures. *Hannon*, ¶ 60, 84 P.3d at 343. The district court ruled the testimony was inadmissible based in part on its conclusion that

5

voluntariness was a jury question that did not require expert assistance and because it found the defense had not shown the testimony was reliable. *Id.*, ¶ 61, 84 P.3d at 345-346. On appeal, this Court concluded the testimony related to the circumstances of the confession and was central to the defense. *Id.*, ¶ 64, 84 P.3d at 347. We further concluded the expert testimony was competent and reliable such that its exclusion deprived the defendant of his right to present a meaningful defense.

[¶21] In the present case, there is no question that Ms. Schaad's testimony concerning EMDR therapy would have been helpful in explaining why Ms. Stalcup initially might not have remembered what happened but later was able to recall Mr. Lorenz grabbing her arm. The testimony that she recalled Mr. Lorenz grabbing her arm was central to her defense that her actions were not the proximate cause of the crash. The remaining question is whether Ms. Schaad's testimony was competent and reliable.

[¶22] W.R.E. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This Court has adopted the *Daubert* two-part test for determining the admissibility of expert testimony. *Cooper v. State*, 2008 WY 5, ¶ 10, 174 P.3d 726, 729 (Wyo. 2008), citing *Bunting v. Jamieson*, 984 P.2d 467, 471 (Wyo.1999). Under that test, the district court first determines whether the expert's methodology is reliable. *Cooper,* ¶ 10, 174 P.3d at 729. Among the factors guiding the district court's assessment of reliability are: 1) whether the theory or technique in question can be and has been tested; 2) whether it has been subjected to peer review; 3) its known or potential rate of error along with the existence and maintenance of standards controlling the technique's operation; and 4) the degree of acceptance within the relevant scientific community. *Id.*, ¶ 12, 174 P.3d at 729. The trial court may also consider the experience and expertise of the proposed witness, whether the expert is proposing to testify about matters growing naturally and directly out of research they have conducted independent of litigation, and the non-judicial uses to which the method has been put. *Id.*

[¶ 23] Upon a determination that the methodology is reliable under the first prong of the *Daubert* analysis, the trial court then must determine whether the expert's proposed testimony fits the facts of the particular case—that is, is it relevant? *Hannon,* ¶ 68, 84 P.3d at 347. Under this second part of the analysis, the expert's opinion must relate to an issue that is actually in dispute and must provide a valid scientific connection to the pertinent inquiry. *Id.*

In applying the two-part *Daubert* analysis, the trial court need not and should not determine the scientific validity of the conclusions offered by an expert witness. The trial court should only consider the soundness of the general scientific principles or reasoning upon which the expert relies and propriety of the methodology applying those principles to the specific facts of the case. The ultimate question for the trial court is whether both sides will have a fair opportunity to test the validity of scientific results; if not, those results should not be admitted.

*Hannon*, ¶ 69, 84 P.3d at 347-48 (internal citations omitted).

[¶24] In the present case, it appears that the district court's grounds for excluding the evidence of EMDR therapy were twofold. First, it concluded expert testimony was not admissible on the issue of whether or not Ms. Stalcup's trial testimony that Mr. Lorenz grabbed her wrist should be believed over her prior statements that she did not recall what happened just before the crash. The district court concluded that issue was for the jury to decide without expert assistance. The second basis for the district court's ruling was its conclusion that Ms. Schaad's testimony did not satisfy the *Daubert* standards for scientific reliability. We begin our discussion with this aspect of the district court's ruling.

[¶25] As reflected in paragraphs 15–16 above, Ms. Schaad demonstrated that she was qualified to testify concerning EMDR therapy based upon her knowledge, skill, experience, training, and education. At the time of trial, she had worked as a psychotherapist using EMDR therapy on a daily basis for ten years and had treated an estimated 600 patients. Additionally, she had worked as an EMDR educator instructing other therapists in the use of the technique for five years. She described EMDR therapy, explaining that it is a technique for resolving trauma by working with memory networks in the brain to release memory the brain has blocked when it is overwhelmed by a traumatic event. She demonstrated that EMDR therapy is widely recognized and used by psychotherapists in treating trauma, including those working with combat veterans. Ms. Schaad testified specifically that EMDR therapy has achieved "the gold standard of excellence" meaning research has shown it to be effective, efficient and reliable. This testimony was uncontroverted. From this testimony, we conclude the district court erred in concluding the testimony did not satisfy *Daubert's* reliability prong. To the contrary, the testimony showed that EMDR therapy has been tested through actual use in the field and is accepted as an effective, efficient and reliable technique for treating trauma. Additionally, Ms. Schaad had actual hands-on experience with EMDR therapy unrelated to litigation or any other judicial use.

7

[¶26] We are not alone in reaching this result. In *Bailey v. State*, 2007 Tex. App. LEXIS 208 (Tex. App. Ct. 2nd Dist. 2007), a case involving sexual assault of a minor, the Court was asked to find that the trial court erred when it allowed the State's expert witness to testify concerning EMDR. There, the witness testified concerning his education and training as a licensed social worker and psychotherapist. He testified that he had attended workshops and listened to speakers to maintain his EMDR certification. He testified concerning his work experience in various hospitals and described EMDR, explaining that it is a memory technique used and recognized in the fields of social work, psychiatry and psychology. Based upon this foundation, the appellate court held the trial court did not err in allowing the testimony. It concluded the State had demonstrated the witness was qualified to testify concerning EMDR based on his knowledge, skill, experience, training, or education, his familiarity with EMDR treatment and recognition and use of the treatment in the field.

[¶27] The district court in the present case did not provide a clear explanation concerning why it discounted the testimony establishing the reliability of EMDR as a treatment method.

> To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision.

*Hannon*, ¶ 83, 84 P.3d at 352, quoting *Bunting*, 948 P.2d at 475. This is especially important in criminal matters where the expert testimony is offered to support the defendant's theory of the case.

> The trial court's decision to exclude in its entirety expert testimony constituting the only evidence supporting a criminal defendant's theory of the case must be supported by more than a conclusory statement that the testimony is unreliable. Such a decision must articulate the factors considered by the trial court and how those factors support its decision.

*Id.*

[¶28] Instead, the district court commented on the issue, raised by the prosecution, that this expert could not testify concerning the accuracy of Ms Stalcup's allegations concerning her memory. However, that was not the point of the expert's testimony and

8

she willingly admitted that no one could validly conclude whether or not a memory was accurate. That was a determination to be made by the jury. *Bunting,* 948 P.2d at 472.

[¶29]  The district court's comments on the proposed expert testimony seemed to indicate skepticism because only "a little bit of scientific evidence" was provided in support of its admission.  However,

> [E]xpert testimony must be based upon reliable methodology, but it need not be so persuasive as to meet the proponent's burden of proof on an issue.  "Shaky" but admissible evidence can be tested through traditional means, such as cross-examination,  contrary  evidence,  and  careful  jury instruction.  …  a trial court's exclusion of evidence as unreliable is potentially inconsistent with the jury's duty to evaluate witness credibility and to assign evidentiary weight. To avoid usurping the jury's role, the trial court should limit its assessment to the soundness of the scientific principles and the propriety of the methodology and should not concern itself with the scientific validity of the conclusions offered by the expert.

*Reichert v. Phipps*, 2004 WY 7, ¶ 9, 84 P.3d 353, 356-57 (Wyo. 2004).

[¶30]  Having concluded Ms. Schaad's testimony satisfied the reliability prong of the *Daubert* test, we turn to the question of whether the proposed testimony fit the facts of the case, that is, whether it was relevant.  We conclude that it was.  Defense counsel intended Ms. Schaad's testimony to lay the foundation for later testimony from Ms. Stalcup's psychotherapist concerning his use of EMDR therapy in treating Ms. Stalcup. The testimony was offered to explain to the jury through a qualified expert that trauma can cause memory repression and EMDR therapy is a recognized technique for resolving trauma in part by releasing repressed memory.  Without the expert testimony, the jury had no way of knowing memory repression is common in trauma victims and memory can be recalled through a technique recognized in the field of psychology for treating trauma.  This testimony was central to Ms. Stalcup's defense.  Without it, Ms. Stalcup was left attempting to explain without expert foundation why if in fact Mr. Lorenz grabbed her arm just prior to the crash she did not say so when questioned after the crash. Evidence concerning EMDR therapy clearly had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  W.R.E. 401.  Additionally, had it been admitted, both sides would have had a fair opportunity to test the validity of the technique.

[¶31]   In ruling that the testimony was not admissible, the district court concluded the truthfulness of Ms. Stalcup's memory recall was a jury question and expert testimony on the issue would not assist the jury.  The problem with this ruling is that the testimony concerning EMDR therapy was not offered to prove the truth of Ms. Stalcup's recalled memory.  The record clearly reflects defense counsel's statements that Ms. Schaad could not say whether Ms. Stalcup was telling the truth when she said she remembered Mr. Lorenz grabbing her arm; Ms. Schaad could only lay the foundation for EMDR therapy as a procedure through which repressed memory may be recalled.  Then it was for the jury to decide whether Ms. Stalcup's recalled memory was believable.  The expert testimony concerning EMDR therapy was relevant to an issue that was in dispute and the district court's ruling excluding it was erroneous.

[¶32]   We recognize this question is a close call and that the district court had to make that call on the second day of trial with the jury waiting. We also recognize that the standard of review is abuse of discretion and that is always a difficult one to apply in close cases.  However, when the right of a criminal defendant to present a defense is at issue, it is this Court's obligation to draw what may seem like a fine line and conclude that despite the district court's best efforts, on this record, its exclusion of evidence constituted an abuse of discretion.

## 2. *Jury Question*

[¶33]   In her second issue, Ms. Stalcup asserts the district court erred by responding, "No" to the jury's question about whether it could consider that neither she nor Mr. Lorenz were wearing seat belts at the time of the crash.  In answering the question in that way Ms. Stalcup contends the district court improperly restricted the jury's fact finding process and prohibited it from taking into account evidence the State's expert relied upon in formulating his opinions.  We review a district court's refusal to give a requested jury instruction for an abuse of discretion. *Mowery v. State*, 2011 WY 38, ¶ 13, 247 P.3d 866, 870 (Wyo. 2011), citing *Pina v. Christensen*, 2009 WY 64, ¶ 8, 206 P.3d 1298, 1300 (Wyo. 2009).  "A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." *Mowery*, ¶ 13, 247 P.3d at 870, quoting *Iseli v. State*, 2007 WY 102, ¶ 9, 160 P.3d 1133, 1135 (Wyo. 2007).

[¶34]   The district court relied on *Allen v. State*, 2002 WY 48, 43 P.3d 551 (Wyo. 2002) when it answered the jury's question.  In that case, the defendant was convicted of two counts of aggravated vehicular homicide.  On appeal, he claimed defense counsel was ineffective for several reasons, including that he conceded in opening statement that the car crash caused the victims' deaths and did not attempt to show that their failure to wear lap belts was the proximate cause.  This Court said:

The state must prove that a defendant's wrongful conduct (. . . driving while under the influence . . .) proximately caused the victims' deaths. To be the "proximate cause," the accident or injury must be the natural and probable consequence of the defendant's wrongful conduct; a "substantial factor" in bringing about the injuries or death. [Citations omitted.] The contributory negligence of a victim is not a defense in a criminal prosecution, but a victim's actions may be considered whenever those actions have a bearing upon the defendant's alleged wrongful conduct [footnote omitted] or in determining whether the defendant's wrongful conduct was the proximate cause of a victim's death. [Citations omitted.]

"A defendant is usually relieved of liability by an unforeseeable intervening cause. However, an intervening cause does not relieve an earlier actor of liability if it was reasonably foreseeable. The causal connection is not broken where the original wrongdoer could reasonably have foreseen that injury to another would be a probable consequence of his [wrongful conduct]."

[Citations omitted.]

In the context of this criminal aggravated vehicular homicide case involving evidence of appellant's intoxication, we find the following reasoning persuasive:

One who drinks and drives should reasonably foresee that some among the potential victims of drunken driving will not wear seat belts and that such victims, among others, might be seriously injured in an alcohol-induced collision.

*State v. Freeland*, 176 Ariz. 544, 863 P.2d 263, 267 (1993).

*Id.*, ¶¶ 42-43, 43 P.3d at 566. On this basis, the *Allen* court held, "a victim's failure to wear a seat belt does not supersede a criminal defendant's causal responsibility." *Id.*

[¶35] Given the holding in *Allen*, Wyoming law is clear that Mr. Lorenz's failure to wear a seat belt was reasonably foreseeable and did not relieve Ms. Stalcup of liability for her own wrongful conduct. To the extent the jury was asking whether it could consider seat belt use in determining proximate cause the district court correctly answered the question "no."

[¶36] Ms. Stalcup agrees that Mr. Lorenz's failure to wear a seat belt would not relieve her of criminal liability if the jury found the act of driving under the influence of alcohol was the proximate cause of his death. She asserts, however, that the jury did not ask whether it could use his failure to wear a seat belt to alleviate her responsibility; rather, the jury asked whether it could "try the fact that neither wore a seat belt." Given this wording, she contends, the district court abused its discretion in answering the question "no" because it prevented the jury from reaching its own conclusion about whether seat belts were used and factoring that in when weighing the testimony of the State's accident reconstruction expert whose opinion was based on the premise that Ms. Stalcup or Mr. Lorenz were not wearing seat belts. One difficulty with this argument is that there was no contention at trial nor was any evidence presented showing that either of the vehicle occupants was wearing a seat belt. That fact was simply not in dispute and the jury had no reason to question the accuracy of the State's expert's testimony that the occupants were not wearing seat belts.

[¶37] Ms. Stalcup also asserts the jury should have been able to take into account seat belt use in considering her claim that Mr. Lorenz grabbed her arm while she was driving. She does not explain how seat belt use or nonuse was relevant to her claim and, again, there was no contention or evidence that either occupant was wearing a seat belt. Even assuming there had been such evidence Ms. Stalcup does not indicate how instructing the jury that it could "try" the issue of seat belt use would have affected her theory of defense. We find no error in the manner in which the district court answered the jury's question.

### 3. Sentencing

[¶38] In her last claim, Ms. Stalcup asserts the district court imposed an illegal sentence when it sentenced her to two six month terms of incarceration on the DUI counts. Although the district court merged the two convictions for sentencing purposes, Ms. Stalcup contends that was not the proper remedy; rather, the district court should have entered only one conviction for the violation of § 31-5-233. Whether a sentence is illegal is a question of law, which we review *de novo*. *Deloge v. State*, 2012 WY 128, ¶ 9, 289 P.3d 776, 778 (Wyo. 2012).

[¶39] Section 31-5-233 provides in pertinent part as follows:

> **§ 31-5-233. Driving or having control of vehicle while under influence of intoxicating liquor . . . .**
>    . . .
>    (b) No person shall drive or have actual physical control of any vehicle within this state if the person:

12

>          (i) Has an alcohol concentration of eight one-
> hundredths of one percent (0.08%) or more;
>          (ii) . . . ; or
>          (iii) To a degree which renders him incapable of
> safely driving:
>               (A) Is under the influence of alcohol;

To support an arrest for a violation of § 31-5-233, a peace officer must have probable cause to believe that the individual was driving or had actual physical control of a motorized vehicle while his BAC was 0.08% or more **or** while he was under the influence of alcohol to an extent rendering him incapable of safely driving. *Michaels v. State ex rel. Dep't of Transp.*, 2012 WY 33, ¶ 21, 271 P.3d 1003, 1011 (Wyo. 2012). The word "or" indicates an alternative, such as "coffee or tea" or "sink or swim." Merriam-Webster's Dictionary 349 (2005). When a statute describes alternative means of committing the same offense, it will support only one conviction and one sentence even if the evidence shows that the statute was violated in both ways.

> In those instances in which the language and purpose of the statute indicate a legislative intent to structure a single offense with alternative methods specified by which the statute may be violated, any violation of the statute is a single offense. According to the general rule, this is the result even if the evidence demonstrates that the statute has been violated in both of the alternative ways and, in such an instance, only one conviction can be sustained.

*Wenger v. State*, 2007 WY 121, ¶ 11, 163 P.3d 824, 826-827 (Wyo. 2007), quoting *Duffy v. State*, 789 P.2d 821, 827 (Wyo. 1990). Consistent with this rule, the district court should have entered only one conviction and sentence for DUI.

## CONCLUSION

[¶40] The district court erred in precluding Ms. Stalcup's expert witnesses from testifying concerning EMDR therapy, and she is entitled to a new trial. The district court did not err in answering the jury's question about seat belt use "no." The district court erred in entering convictions and imposing sentences on both counts under § 31-5-233(b).

[¶41] We reverse and remand the aggravated vehicular homicide matter for a new trial. We reverse the DUI convictions and remand for entry of a new judgment and sentence convicting Ms. Stalcup of one violation of § 31-5-233 and imposing one sentence.

13

**HILL, Justice**, concurring in part and dissenting in part, with whom **BURKE, Justice**, joins.

[¶42]  I concur with the majority opinion's disposition of Ms. Stalcup's second and third issues on appeal, but I find that I must respectfully dissent from the reversal of Ms. Stalcup's aggravated vehicular homicide conviction.

[¶43]  Ms. Stalcup's defense was that her passenger's action of grabbing the steering wheel was what caused the vehicle accident that claimed her passenger's life, not Ms. Stalcup's impaired driving.  Ms. Stalcup thus sought to use expert testimony regarding EMDR therapy to explain why she had no memory of her passenger grabbing the steering wheel immediately following the accident but did have a memory of the passenger's action sometime later.  Given the purpose for which Ms. Stalcup sought to use this expert testimony, I feel it is important to consider the definition of the term "memory."

[¶44]  Memory means "the mental capacity or faculty of retaining or recalling facts, events, impressions, or previous experiences," or "the act or fact of retaining and recalling impressions, facts, etc." *Random House Webster's College Dictionary* 846 (1992).  It is a term that connotes a recollection of a fact or event that occurred, and that is of course how Ms. Stalcup sought to present her post-therapy perception of what occurred during her vehicle accident.

[¶45]  On the other hand, as the majority opinion points out in its Paragraph 17, during Ms. Stalcup's offer of proof, her expert testified that EMDR therapy is not designed to induce memory recall, that neither she nor anyone else in her field could attest to the accuracy of any memory recalled, and that the reliability of memory recall produced by EMDR therapy had not been subjected to peer review.  In other words, the expert testified that the perception of facts or events that is produced by EMDR therapy might be a recollection of something that actually occurred or it might not be.

[¶46]  This Court reviews a trial court's decision regarding the admissibility of expert testimony for an abuse of discretion and only reverses such a decision if we find that the trial court could not reasonably conclude as it did.  *See Dean v. State*, 2008 WY 124, ¶ 14, 194 P.3d 299, 303 (Wyo. 2008).  We have long recognized that this standard of review contemplates allowing a trial court broad latitude in making these determinations.

> Decisions of the trial court with respect to the admissibility of evidence are entitled to considerable deference and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal.

*Dean*, ¶ 14, 194 P.3d at 303 (quoting *Bunting v. Jamieson*, 984 P.2d 467, 470 (Wyo. 1999)).

[¶47] Under these circumstances, I cannot conclude that the district court abused its discretion in excluding the proffered testimony concerning EMDR therapy. While Ms. Stalcup's expert was certainly qualified in the field of EMDR therapy, and a reliable scientific basis existed for the therapy's use in treating trauma, the record supports the court's determination that a reliable scientific or scholarly basis does not exist to link use of EMDR therapy with memory recall. Nor can I conclude that exclusion of the EMDR testimony interfered with Ms. Stalcup's constitutional right to present her defense. I agree instead with the State that:

> [T]he district court permitted two different experts to provide testimony on Stalcup's behavior in the wake of the accident. Schaad testified that people who suffer trauma feel overwhelmed and can develop mental disorders like anxiety and depression. She also explained that traumatic situations can cause the brain to stick, leading to numbness and repression. Stalcup's treating psychologist reinforced these statements when he testified that Stalcup could not function and suffered emotional injury because of the crash. In short, Stalcup succeeded in having an expert give the jury a scientifically sound explanation for her memory gap— without describing EMDR.

[¶48] For these reasons, I would affirm the district court's decision to exclude the expert testimony concerning EMDR therapy.