2003 WY 55

**Benita MILLER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 01–236.**

Supreme Court of Wyoming.

April 30, 2003.

Kenneth M. Koski, Wyoming State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel, Representing Appellant. Argument by Mr. Roden.

Hoke MacMillan, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Faculty Director, and Karen L. Greene, Student Director, of the Prosecution Assistance Program, Representing Appellee. Argument by Ms. Greene.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] In this appeal, we consider issues presented by Appellant Benita Miller (Miller) following her conviction for aggravated assault and battery for threatening another with a drawn deadly weapon in violation of Wyo. Stat. Ann. § 6–2–502(a)(iii) (LexisNexis 2001).[1] We affirm.

---

1. § 6–2–502(a)(iii) states:

(a) A person is guilty of aggravated assault and battery if he:

## ISSUES

[¶ 2] Miller presents the following statement of the issues:

1. Whether the district court abused its discretion when it prohibited appellant from inquiring into one of the victim's prior felonies that was more than ten years old for impeachment purposes under W.R.Cr.P. 609.

2. Whether the evidence was insufficient to convict appellant of aggravated assault.

3. Whether the trial court erred in denying appellant a lesser-included offense instruction of "reckless endangering;" additionally, this Court should reconsider its ruling that reckless endangering is not a lesser-included offense of aggravated assault and battery.

The State rephrases the issues as:

1. Did the district court abuse its discretion when it prohibited appellant from inquiring into one of the victim's prior felonies that was more than ten years old for impeachment purposes under W.R.E. 609?

2. Did the State present sufficient evidence to convict appellant of aggravated assault and battery?

3. Should this Court overrule its decision in *Sindelar v. State*, 932 P.2d 730 (Wyo. 1997), which held that reckless endangering is not a lesser included offense of aggravated assault and battery involving a threat to use a drawn deadly weapon?

## FACTS

[¶ 3] Miller and the victim, Dessmon DuVall (DuVall), had long disliked each other and frequently argued, insulted each other, and verbally abused one another with vulgar language. In April of 2001, Miller lived with her boyfriend, Lyle Geist. Geist had previously been married to DuVall's sister, Joanne, and Geist and DuVall had been friends for some years. At Geist's invitation, DuVall began living with Miller and Geist.

[¶ 4] On April 8, 2001, after an evening of drinking alcohol by all three, DuVall and

Miller argued, and DuVall called her several foul names. Miller grabbed a loaded 357 magnum pistol and pointed it at DuVall. During the State's case-in-chief, DuVall testified that as Miller pointed the gun at him, she told him and Geist that she would blow his head off. The pistol was a single action that required the hammer to be manually cocked before firing. Miller pulled back the hammer while it was pointed at DuVall. Geist pushed Miller's hand, and the gun discharged, firing one shot into the floor. Geist was also a State witness; however, he testified that Miller never said a word to DuVall as she pointed the gun and drew back the hammer. DuVall called police, and Miller was arrested.

[¶ 5] Miller was charged with one count of aggravated assault and battery for threatening DuVall with a drawn deadly weapon. The State filed a motion in limine to exclude evidence of two of DuVall's three felony convictions. DuVall had been convicted in 1965 for escape, burglary, and auto theft; convicted again in 1976 of aggravated assault for threatening another with a drawn deadly weapon; and in 1998 for possession of cocaine. The State contended that W.R.E. 609(b) prohibited introduction of convictions into evidence if those convictions were more than ten years old and claimed that it would be prejudiced by their admission. At a hearing on the motion, the State did not object to Miller's questioning DuVall about the 1998 cocaine possession conviction, and Miller agreed that she would not be inquiring about the 1965 conviction. Defense counsel also stated that she would not be mentioning the 1976 conviction itself, but argued that if DuVall denied being violent, she should be entitled to introduce the conviction as impeachment as permitted by W.R.E. 404(a). The district court granted the State's liminal motion for the 1976 conviction, but stated that it would reconsider that ruling if upon Miller's inquiry into the victim's violent character, the evidence was required for impeachment purposes.

* * * *

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in

defense of his person, property or abode or to prevent serious bodily injury to another[.]

[¶ 6] In his testimony, DuVall admitted calling Miller very vulgar names but denied that he raised his voice to her or lost his temper on that evening. DuVall also denied ever getting angry, but, during Miller's cross-examination, DuVall admitted that he had assaulted another person, threatened others who threatened him, and threatened another with a deadly weapon. Miller's defense counsel also elicited that DuVall was a convicted felon who illegally possessed a firearm and had been convicted of felony possession of cocaine. Following this cross-examination, Miller's defense counsel did not request that the district court reconsider its order excluding admission of DuVall's 1976 assault conviction.

[¶ 7] Miller presented a self-defense theory at trial based on her fear of DuVall's past violence and threats of violence to her, claiming that on April 8, 2001, although she was not speaking to him at all, DuVall became violently angry at her, came out of his chair, screamed profanities into her face, shook his finger in her face, and threatened her with physical harm. The State's witness, Geist, confirmed that DuVall had threatened her in the past, that Miller had stated that she was afraid of him, and that DuVall did become violent that night. Geist testified that Du-Vall got out of his chair, stood over Miller, screamed at her, called her vulgar names, and shook his finger at her. During his testimony, DuVall described the incident as some name-calling and denied that he raised his voice or moved from his chair.

[¶ 8] Based on this testimony, the defense moved for a judgment of acquittal, contending that the State had not proved beyond a reasonable doubt that Miller had not acted reasonably in self-defense or had verbally threatened DuVall. During its consideration of the motion, the trial court asked the State whether it could disregard the many inconsistencies in the testimony presented by the State's witnesses. The State replied that Miller's actions, not her words, constituted a threat within the definition established by judicial precedent. The trial court denied the motion for judgment of acquittal.

[¶ 9] At the jury instruction conference, Miller requested, but the trial court denied, a reckless endangering instruction as a lesser-included offense. Miller was convicted and sentenced, filed motions for a new trial, and renewed her Motion For Judgment of Acquittal. The motions were denied, and this appeal followed.

## DISCUSSION

### *Standard of Review*

 [¶ 10] Generally, an evidentiary ruling is within the sound discretion of the trial court, and we will not find error unless the court abused its discretion. *Ramirez v. State*, 994 P.2d 970, 973 (Wyo.2000) (citing *Gentry v. State*, 806 P.2d 1269, 1271 (Wyo. 1991)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). A witness's prior convictions may be used as impeachment evidence under W.R.E. 609. *Ramirez*, 994 P.2d at 973.

[¶ 11] The standard we employ in reviewing sufficiency of evidence claims is well established:

[The standard] is this court's assessment as to whether all of the evidence presented is "adequate to support a reasonable inference of guilt beyond a reasonable doubt to be drawn by the finder of fact, viewing the evidence in the light most favorable to the state." * * * We do not substitute our judgment for that of the jury in applying this rule, and our only duty is to determine if a quorum of reasonable and rational individuals would, or even could, have come to the same result the jury actually did.

*Baier v. State*, 891 P.2d 754, 761 (Wyo.1995) (quoting *Taul v. State*, 862 P.2d 649, 657 (Wyo.1993)).

### *W.R.E. 609(b)'s Time Limitation Did Not Automatically Exclude Evidence of the Victim's Conviction For Aggravated Assault.*

[¶ 12] Miller argues that her self-defense claim would have been proved had she been

able to show that she justifiably feared Du-Vall because he had been violent in the past. She contends that although DuVall's convictions exceeded the ten-year limitation imposed by W.R.E 609, the convictions were admissible for impeachment purposes when DuVall testified on cross examination that he did not have a violent character. The State contends that because the trial court made a provisional ruling and the defense did not offer the evidence at trial, the defense has failed to show that the trial court prohibited the use of the conviction or abused its discretion in any manner.

[¶ 13] Our review of the record shows that, at trial, DuVall admitted being violent in the past, but denied being violent to Miller in the past. At the hearing on the State's motion in limine, Miller stated she did not intend to introduce the 1976 assault conviction, but intended, as permitted by W.R.E. 404(a), to impeach any testimony of DuVall's denying that he had been violent in the past. The district court apparently understood this to mean that unless DuVall denied being violent, she would not introduce his assault conviction. The district court granted the motion subject to reconsideration if DuVall denied that he was violent. Miller now contends that the district court abused its discretion by violating the requirement of W.R.E. 609(b) that the ten-year limitation not be imposed without examining whether the probative value of DuVall's 1976 conviction substantially outweighed its prejudicial effect. Rule 609 states in pertinent part:

(a) *General Rule.*—For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one (1) year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

(b) *Time Limit.*—Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

[¶ 14] We have previously recognized that in addition to imposing a time limit, Rule 609(b) mandates a second determination. *Vaupel v. State,* 708 P.2d 1248, 1250 (Wyo. 1985). Under Rule 609(b), the court must view specific facts and circumstances and decide not just that the conviction's probative value outweighs its prejudicial effect, but also that the probative value is "substantially" outweighed. *Id.* We, therefore, agree with Miller that W.R.E. 609(b) does not permit the trial court's automatic exclusion of a remote conviction without examining whether that evidence is more probative than prejudicial.

[¶ 15] At the conclusion of the hearing, the district court stated:

[T]he motion is not contested as to references to the convictions of the 1976 assault with a deadly weapon or the escape, burglary and auto theft of 1965 which, as I heard it, the State wants to be limited under Rule 609, so I'll prohibit inquiry as to those felony convictions for impeachment purposes under Rule 609.

The court then made its provisional ruling. Although it appears that the district court granted the motion because it was uncontested, Miller disputes that the district court had that discretion and claims it could only grant the motion to exclude DuVall's 1976 conviction upon the further consideration required under the rule. However, even if we determined that a rule violation occurred, causing an abuse of discretion, such an error is reversible only if prejudice is demonstrated. We do not see where these facts show that Miller was prejudiced because she did ask

questions about DuVall's violent character, supporting her defense theory, during her defense counsel's cross-examination.

[¶ 16] As explained by her defense counsel at the motion hearing, Miller intended to have the jury consider DuVall's past violence to justify her self-defense theory which was that she knew he was violent and feared him on that evening when he began verbally abusing her. On Miller's cross-examination, DuVall admitted that he had been violent in the past and made the following responses:

Q. Have you ever assaulted another person?

R. ... Only if they assaulted me first.

Q. Have you ever threatened another with a deadly weapon?

R. Only if they threatened me first.

Q. So you have on occasion threatened others?

R. Yes, if they threaten me, yes.

We believe that Miller's intended purpose was accomplished and evidence of the 1976 assault conviction was not cumulative to this evidence of DuVall's past violent acts, but its omission was not prejudicial. We find no reversible error.

### The Evidence Was Sufficient To Support The Conviction

[¶ 17] The jury was instructed that the State must prove beyond a reasonable doubt that Miller's conduct was not reasonably necessary in defense of her person. Miller asserts that this element of the crime was not proved beyond a reasonable doubt, and further there was insufficient evidence to convict because of the conflicting evidence between the State's two witnesses, DuVall and Geist.

[¶ 18] Jury Instruction No. 4 instructed that the jury could only find Miller guilty if each element was proved beyond a reasonable doubt and listed those elements to be:

YOU ARE INSTRUCTED THAT the elements of the crime of Aggravated Assault and Battery charged in this case, are:

1. On or about the 8th day of April, 2001,

2. In the County of Natrona, and State of Wyoming

3. The Defendant, Benita Danelle Miller

4. Threatened to use a drawn deadly weapon on Desmon DuVall [sic]

5. When not reasonably necessary in defense of the Defendant's person, property or abode or to prevent serious bodily injury to another.

[¶ 19] In Instruction No. 11, the jury was again instructed that the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. Instruction Nos. 12 through 16 explained self-defense. Instruction No. 12 directed:

YOU ARE INSTRUCTED that, one who has reasonable grounds to believe that another will attack her, and that the anticipated attack will be of such a character as to endanger her life or limb, or to cause her serious bodily harm, has a right to arm herself for the purpose of resisting such attack.

If the defendant armed herself in reasonable anticipation of such an attack, that fact alone does not make the defendant the aggressor or deprive the defendant of the right of self-defense.

Instruction No. 13 discussed the duty to retreat:

YOU ARE INSTRUCTED THAT, if the defendant at her place of residence had reasonable ground to believe and actually did believe that she was in imminent danger of death or serious bodily harm and that the use of deadly force was necessary to repel such danger, she was not required to retreat or to consider whether she could safely retreat. The defendant was entitled to stand her ground and use such force as was reasonably necessary under the circumstances to save her life or protect herself from serious bodily harm.

[¶ 20] Instruction Nos. 14 and 15 told the jury that the defendant was entitled to use the force that a reasonable person would use under the circumstances to prevent injury; that the danger did not have to be real or imminent and the other person did not have to intend to harm her so long as the defendant had reasonable cause to believe and did

believe this. Instruction No. 16 advised that when the danger would no longer exist to a reasonably prudent person, the right to use force in self-defense ends.

■ [¶ 21] The law of self-defense finds its foundation in the concept of necessity, and the right to defend oneself, and the amount and type of force used, is relative to what is reasonably necessary under the circumstances. *Baier*, 891 P.2d at 758. Because the jury must determine whether a defendant reasonably perceived a threat of immediate bodily injury under the circumstances and whether the defendant defended herself in a reasonable manner, the jury must evaluate the totality of the circumstances and evaluate all of the defendant's options in protecting herself from such a perceived threat of harm. *Id.*

[¶ 22] *Baier* considered a similar argument that the evidence produced at trial was insufficient to negate his claim of self-defense because his evidence of self-defense was believable and that the State did not disprove it. *Id.* In considering the facts there, we applied the rule that

> [i]t is not our function to assess the facts of this case or reweigh the evidence. In this process, we must assume that "the jurors believe only the evidence adverse to the defendant." It is the role of the jury, as fact finder, to evaluate the evidence * * * as well as weigh the credibility of the witness[es].

*Id.* at 761 (quoting *Taul*, 862 P.2d at 657).

■ [¶ 23] Considering the State's evidence as true, drawing every favorable inference from it, and leaving out entirely the appellant's conflicting evidence, we found that the following facts sustained Baier's conviction:

> The jury was presented with testimony that Mr. Morelli politely asked appellant to keep his language and conversation down. Testimony was given that appellant did not like being told what to do and reacted by trying to get out of the booth, shoving Mr. Morelli in the process. Mr. Morelli reacted to appellant's shoving by grabbing appellant around the neck and pushing him back down in the booth to calm him down.

> The jury heard testimony that Mr. Morelli released appellant, putting both of his hands on the table, while looking at Mr. Harris and requesting that he try to keep appellant calmed down. Further, the jury heard testimony that while Mr. Morelli's hands were on the table and he was acting in a non-threatening manner, appellant picked up a fork and stabbed Mr. Morelli in the eye.

*Id.* at 761. Unlike Mr. Morelli, who did not initially act in a threatening manner toward Baier, DuVall was threatening to Miller initially; however, similar to Mr. Morelli's situation, it appears that the jury could have decided that DuVall had stopped his threatening conduct and had reseated himself when Miller retrieved her gun, pointed it at him, and cocked its hammer so that the gun discharged just as her hand was pushed away by Geist. Geist testified that DuVall had seated himself when Miller got the gun, and DuVall was not threatening Miller when she pointed it at him and cocked the hammer. The State showed that in their twenty-five year history, DuVall had never physically harmed Miller, did not do so on the evening in question, and that no danger of physical harm existed at the time that Miller retrieved and pointed the gun, and then cocked the gun's hammer. Based on the instructions, the jury could have determined that the State had met its burden that it was not reasonably necessary for Miller to defend herself by arming herself, pointing the weapon at DuVall and cocking the hammer.

■ [¶ 24] Miller contends that the inconsistencies between DuVall's testimony and Geist's testimony did not permit the jury to decide that the State had proved that Miller threatened DuVall with the gun. The jury was instructed:

### Instruction No. 7

YOU ARE INSTRUCTED that "threatens to use" means more than mere presence of a weapon. The phrase "threatens to use" requires proof beyond a reasonable doubt of an actual threat of physical injury during the act of employing a deadly weapon.

Instruction No. 8

YOU ARE INSTRUCTED that a threat may be expressed by words or acts or a combination of words and acts.

The instructions are based upon this Court's definition of the phrase "threatens to use" in *Johnston v. State*, 747 P.2d 1132, 1134–35 (Wyo.1987). In that case, we held that proof of the mere presence of a weapon is insufficient to satisfy the "threatens to use" element of the crime of aggravated assault and battery. *Id.* at 1134. The phrase "threatens to use" requires proof of an actual threat of physical injury during the act of employing a deadly weapon. *Id. See also Lowseth v. State*, 875 P.2d 725, 729 (Wyo.1994).

■ [¶ 25] State witnesses DuVall and Geist testified inconsistently whether Miller threatened to shoot DuVall. DuVall testified that Miller told him she would blow off his head, and Geist testified that she did not say a word. In *Johnston*, having defined "threatens to use," we also considered conflicting evidence, and we determined that the following facts met that definition and established the essential element of "threatens to use:"

> To illustrate the scene portrayed to the jury, the evidence viewed in a light most favorable to the state showed: Appellant was a forty-three-year old, 6′3″ man, weighing 245 pounds, towering over McDaneld, a nineteen-year-old, 5′11″ boy, weighing 155 pounds; "working," i.e., opening and closing, the butterfly knife as he approached within inches of the boy's throat; nicking the boy; only to be interrupted in the further employment of the knife by the advent of McDaneld's mother onto the scene.

*Johnston*, 747 P.2d at 1136–37. We held that [u]nder these circumstances, not only could the jury properly have inferred a threatening employment of the drawn knife as an expression of an intention to inflict pain and injury, but also as an accomplishment of that expression as manifested by the nicked and bloodied throat. These were reasonable inferences that the jury was entitled to draw from the evidence before it. Again, it is not this court's function to re-weigh the evidence or re-examine the believability of the witnesses, but only to declare sufficiency or lack of sufficiency of the evidence. In this case we declare sufficiency.

*Id.* at 1137.

[¶ 26] Miller's actions also meet the definition of "threatens to use" because she retrieved the gun, pointed it at DuVall, cocked the hammer and then discharged the gun into the floor because Geist pushed the gun's aim away from DuVall. This evidence was established by both Geist's testimony and DuVall's testimony and sufficiently proves that element of the crime.

### *Reckless Endangering Is Not A Lesser–Included Offense Of Aggravated Assault And Battery.*

[¶ 27] Miller recognizes that this Court has held that the misdemeanor, reckless endangering,[2] is not a lesser-included offense of aggravated assault and battery. *Sindelar v. State*, 932 P.2d 730, 732 (Wyo.1997). *Sindelar* held that the offense of reckless endangering encompasses an additional element that is not included in the elements of aggravated assault and battery. *Id.* at 734. Miller contends that although reckless endangering is not always a lesser-included offense of aggravated assault and battery, sometimes the evidence adduced at trial would support giving the instruction, and she urges this Court to reconsider its holding in *Sindelar* based on the evidence in her case.

■ [¶ 28] We have recently reaffirmed our commitment to the statutory ele-

---

**2.** Wyo. Stat. Ann. § 6–2–504 (LexisNexis 2001) states:

(a) A person is guilty of reckless endangering if he recklessly engages in conduct which places another person in danger of death or serious bodily injury.

(b) Any person who knowingly points a firearm at or in the direction of another, whether or not the person believes the firearm is loaded, is guilty of reckless endangering unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another.

(c) Reckless endangering is a misdemeanor punishable by imprisonment for not more than one (1) year.

ments test established in *State v. Keffer*, 860 P.2d 1118 (Wyo.1993). *Mueller v. State*, 2001 WY 134, ¶ 9, 36 P.3d 1151, ¶ 9 (Wyo.2001). As *Mueller* explained, the test is more fully expressed in this five-step analytic process: (1) a proper request for the instruction is made; (2) the elements of the lesser-included offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser-included offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense; and (5) mutuality exists such that the lesser-included charge can be demanded by either the prosecution or the defense. When all five parts of this test are met, and the lesser-included offense instruction is not given, the trial court commits reversible error. *Id.* (citing *Eatherton v. State*, 761 P.2d 91, 94–95 (Wyo.1988)). However, *Sindelar's* conclusion that an additional element is present in the reckless endangering statute does not change, and we will not overrule its decision.

[¶ 29] The judgment and sentence are affirmed.