# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 36

OCTOBER TERM, A.D. 2013

March 12, 2014

MICHAEL LEE COOPER,

Appellant
(Defendant),

v.

S-12-0215

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
The Honorable W. Thomas Sullins, Judge

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey Pope, Assistant Attorney General; Caitlin F. Young, Assistant Attorney General. Argument by Ms. Young.

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\* Justice Voigt retired effective January 3, 2014.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1]    Mr. Cooper challenges his conviction for aggravated assault by threatening to use a drawn deadly weapon.  He asserts his trial counsel was ineffective because she failed to call an expert witness; the district court improperly instructed the jury on the law of self defense; and there was insufficient evidence of a threat to support the jury's guilty verdict.  We conclude there was sufficient evidence to support the jury's verdict but that Mr. Cooper did not receive effective assistance of counsel and the jury was improperly instructed on self defense.  We, therefore, reverse and remand for a new trial.

### ISSUES

[¶2]    Mr. Cooper presents the following issues on appeal:

> I.      Was Mr. Cooper denied his constitutional right to effective assistance of counsel?
>
> II.     Was the jury improperly instructed on the law?
>
> III.    Was the evidence sufficient to support the jury's verdict on the crime charged?

Though stated in more detail, the State presents similar issues.

### FACTS

[¶3]    On July 9, 2011, Mr. Cooper and his friends, Shantel Webb, Tom Hinckley and Colby Davis, spent the afternoon drinking and then attended the Central Wyoming Fair in Casper, Wyoming.  They got into an altercation with Josh Rodabaugh (Josh) and Michael Sanchez over a carnival game, and law enforcement directed all of them to leave the fairgrounds.

[¶4]    Mr. Cooper and his friends returned to Mr. Cooper's residence, which was located close to the Loaf and Jug on Poplar Street.  In the meantime, Josh and Mr. Sanchez called Josh's father, Ronald "Kirk" Rodabaugh (Kirk), to come and pick them up because they had two flat tires.  They stopped at the Loaf and Jug so Kirk could get some iced tea.

[¶5]    Ms. Webb and Mr. Davis decided to walk from Mr. Cooper's house to the Loaf and Jug for cigarettes.  Josh confronted them, and a shouting match ensued.  Kirk witnessed what was happening and began yelling as well.  He also asked the store clerk to call the police and directed Ms. Webb and Mr. Davis to wait for the officers to arrive.  They ignored his command and began walking back to Mr. Cooper's house.

1

[¶6]  While the argument was going on, Mr. Cooper and Mr. Hinckley also decided to go the Loaf and Jug, and Mr. Cooper retrieved some money and a gun from his residence. They met up with Ms. Webb and Mr. Davis and all four of them started walking back to Mr. Cooper's residence.

[¶7]  The Rodabaughs got back into their car, with Kirk driving, and began looking for the Cooper group. Kirk located them and drove toward them. Although the timing of the events was contested, it was undisputed that Kirk drove toward Mr. Cooper, Mr. Cooper brandished a gun and shot into the windshield twice, and Kirk hit Mr. Cooper with the car. Mr. Cooper shot a third time as he lay upon the hood of the car. Kirk then stopped the car, causing Mr. Cooper to fall off, drove forward again and pinned Mr. Cooper underneath the car and next to a fence. Kirk got out of the car and Mr. Cooper told him to get the car off of him. Kirk refused and Mr. Cooper shot three more times from under the car, hitting Kirk in the calf once.

[¶8]  Law enforcement arrived and both Kirk and Mr. Cooper were transported to the hospital. Kirk was treated for the gunshot wound, and Mr. Cooper had numerous injuries including a broken collarbone, broken back and punctured lung. After interviewing the witnesses and conducting an investigation, the State charged Mr. Cooper with aggravated assault and battery for threatening Kirk with a drawn deadly weapon. Mr. Cooper claimed he had acted in self defense.

[¶9]  The matter was tried to a jury, which returned a guilty verdict. After Mr. Cooper was sentenced, he filed a timely notice of appeal. Mr. Cooper's original trial counsel withdrew and new counsel was appointed to represent him. New counsel filed a W.R.A.P. 21 motion for a remand, claiming that trial counsel did not effectively present his self defense claim because she failed to retain an expert to testify about the distance between the car and Mr. Cooper.

[¶10] We granted a partial remand for an evidentiary hearing on his ineffective assistance of counsel claim. At the hearing, defense appellate counsel questioned Mr. Cooper, his trial counsel and Gregory Taylor, an investigator and former law enforcement officer who was trained in accident reconstruction. Mr. Taylor testified that, based upon the information in the record and his investigation, Kirk's car was just inches from Mr. Cooper when he fired the first two rounds. The district court issued its findings of fact and conclusions of law, ruling that trial counsel was effective.

## DISCUSSION

### 1. Sufficiency of the Evidence

[¶11] We begin our discussion of this case with an analysis of the sufficiency of the evidence to support the jury's guilty verdict. If the evidence was legally insufficient to

support a conviction, an order directing entry of a judgment of acquittal is the only just remedy. *Ken v. State,* 2011 WY 167, ¶ 17, 267 P.3d 567, 572 (Wyo. 2011). The Double Jeopardy clause of the United States and Wyoming constitutions would prohibit a retrial under those circumstances. U.S. Const., Amend. 5; Wyo. Const. Art. 1, § 11. *See also Ken,* ¶ 17, 267 P.3d at 572; *Tanner v. State,* 2002 WY 170, ¶ 17, 57 P.3d 1242, 1247 (Wyo. 2002); *Burks v. United States,* 437 U.S. 1, 18, 98 S. Ct. 2141, 2150, 57 L. Ed. 2d 1 (1978).

[¶12] In reviewing a sufficiency of the evidence claim:

> we examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.

*Ken,* ¶ 19, 267 P.3d at 572, quoting *Daves v. State,* 2011 WY 47, ¶ 30, 249 P.3d 250, 259 (Wyo. 2011). *See also Grimes v. State,* 2013 WY 84, ¶ 8, 304 P.3d 972, 975 (Wyo. 2013).

[¶13] Mr. Cooper was convicted of aggravated assault and battery under Wyo. Stat. Ann. § 6-2-502(a)(iii) (LexisNexis 2013):

> (a) A person is guilty of aggravated assault and battery if he:
>
> * * * *
>
> (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another[.]

[¶14] Mr. Cooper claims the evidence was insufficient on the "threatens to use" element of the crime. The district court instructed the jury on the definition of "threatens to use" as follows:

> "Threatens to use" means more than mere presence of a weapon. The phrase "threatens to use" requires proof beyond a reasonable doubt of an actual threat of physical injury during the act of employing a deadly weapon.

3

A threat may be expressed by words or acts or a combination of words and acts.

[¶15] Mr. Cooper does not challenge this instruction, and it is consistent with our precedent. This Court defined "threatens to use" in the context of aggravated assault and battery under § 6-2-502(a)(iii) as "an actual threat of physical injury during the act of employing a deadly weapon." *Johnston v. State,* 747 P.2d 1132, 1134 (Wyo. 1987). We also approved the following definition of "threat" in that case:

> A threat is an expression of an intention to inflict pain, injury, or punishment. It may be expressed by words or acts, or a combination of words and acts. Considering all of the circumstances of the case, you must decide whether the defendant's words and acts amounted to an express or implied statement of his intention to use a drawn deadly weapon to inflict pain, injury, or punishment.

*Id.* at 1135. *See also Miller v. State,* 2003 WY 55, ¶¶ 24-26, 67 P.3d 1191, 1197-98 (Wyo. 2003); *United States v. Jenkins,* 17 Fed. Appx. 769, 775 (10ᵗʰ Cir. 2001) (under Wyoming law, a threat does not have to be verbal but can be accomplished simply by actions).

[¶16] Mr. Cooper claims there was evidence that he possessed and used a drawn deadly weapon, but no evidence that he threatened to use it. He asserts there was no evidence that he expressed an intention to inflict pain, injury or punishment on Kirk. Although Mr. Cooper acknowledges raising the gun and shooting it, he states that he only pointed the gun in the immediate act of shooting. He claims the State focused on the fact he actually shot Kirk from under the car, but that, since there was no spoken threat and Kirk could not see him, no threat occurred at that time.[1]

[¶17] Mr. Cooper's argument ignores the chain of events. Casper Police Department Detective Randy Dolberg testified Mr. Cooper told him that when he got the gun from his home and put it in the waist band of his pants, there was ammunition in the magazine but the chamber was not loaded. Prior to being pinned under the car and shooting Kirk, Mr. Cooper brandished the gun and shot through the windshield. Because a bullet was not

---

[1] Mr. Cooper asserts the State should have charged him with aggravated assault by attempting to cause bodily injury with a deadly weapon under Wyo. Stat. Ann. § 6-2-502(a)(ii), instead of threatening to use a drawn deadly weapon under subsection (iii). According to Mr. Cooper, "[t]he problem with the mischarge was that the entire trial was directed at a charge which had not been filed." We agree that the difficulties in this case arose largely from the fact he was charged with a threat when he actually shot the victim. These circumstances are not, however, unique. In *Johnston, supra,* we upheld a conviction based on the defendant's threat against the victim with a knife, even though he had also nicked him with the blade.

loaded in the chamber, he "racked a round" prior to shooting toward the windshield. A recording of Detective Dolberg's interview with Mr. Cooper was admitted into evidence and played for the jury at trial. It confirms that Mr. Cooper stated he pulled the gun out of his pants, cocked the weapon and fired. Kirk also testified that, as he turned the corner with his car, he saw Cooper pull a gun out of his pants and point the gun straight at him.

[¶18] In many respects, the circumstances in the present case are similar to those presented in *Miller, supra*. During an argument with the victim, Ms. Miller retrieved a gun, pointed it at the victim, cocked the hammer and fired a shot which hit the floor because her boyfriend pushed the gun down. *Miller,* ¶¶ 24-26, 67 P.3d at 1198. We concluded the evidence of threatening to use a drawn deadly weapon was sufficient to support Ms. Miller's conviction of aggravated assault and battery under § 6-2-502(a)(iii). Similarly, Mr. Cooper's actions of brandishing a gun and "jacking a round" or cocking the weapon before shooting were sufficient to establish he threatened to use a drawn deadly weapon.

## 2. Ineffective Assistance of Counsel

[¶19] The right to effective assistance of defense counsel is guaranteed by the Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that trial counsel's performance was deficient and the deficient performance prejudiced his defense. *Osborne v. State,* 2012 WY 123, ¶ 19, 285 P.3d 248, 252 (Wyo. 2012); *Ken,* ¶ 27, 267 P.3d at 574; *Strickland v. Washington,* 466 U.S. 668, 690–91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The deficiency prong requires a showing that counsel failed to render such assistance as would have been offered by a reasonably competent attorney. *Ken,* ¶ 27, 267 P.3d at 574. If the defendant establishes that counsel's performance was deficient, he must then demonstrate that he was prejudiced by showing "a reasonable probability exists that, but for counsel's deficient performance, the outcome would have been different." *Osborne,* ¶ 19, 285 P.3d at 252.

[¶20] Ineffective assistance of counsel claims involve mixed questions of law and fact. *Osborne*, ¶ 17, 285 P.3d at 252. We defer to the district court's findings of fact unless they are clearly erroneous. *Strandlien v. State,* 2007 WY 66, ¶ 20, 156 P.3d 986, 992 (Wyo. 2007). The district court's "conclusions of law, which include the question of whether counsel's conduct was deficient and the question of whether the appellant was prejudiced by that deficient conduct," are reviewed *de novo*. *Id., quoting Robinson v. State,* 2003 WY 32, ¶ 16, 64 P.3d 743, 748 (Wyo. 2003).

[¶21] Mr. Cooper claimed that he was not guilty of aggravated assault and battery because he acted in self defense. Specifically, he asserted he initially shot at Kirk's car because he was about to be run over. He estimated the car was no more than twenty feet from him when he fired. Kirk maintained that Mr. Cooper was forty to fifty feet away

5

when the shooting started and he accelerated toward Mr. Cooper after the first shots were fired. The determination of where the car was in relation to Mr. Cooper when he pointed his weapon and fired was obviously important, and Mr. Cooper claims his trial counsel's performance was defective because she failed to retain an expert witness to testify as to the distance based upon the angles at which the first two bullets hit the car.

[¶22] Counsel has a duty to conduct reasonable investigations or make a reasonable decision that makes particular investigations unnecessary. *Lopez v. State,* 2004 WY 28, ¶ 29, 86 P.3d 851, 860 (Wyo. 2004), citing *McCoy v. State,* 886 P.2d 252, 254 (Wyo. 1994). When an ineffective assistance claim is based upon the failure to call an expert witness, the defendant must show an expert was available who would have testified consistently with his theory. *Id.,* ¶ 30, 86 P.3d at 860.

[¶23] Mr. Cooper filed an affidavit with his motion for remand, stating he "shot at the car only at the last second as it approached to run me down." He said that his trial counsel told him that she would retain the services of an expert witness to analyze the "ballistics evidence in my case and testify regarding a reconstruction of the locations and relationships between myself and the car operated by the 'victim' at the moment of the shooting." She did not, however, present an expert.

[¶24] The State claims defense counsel's decision not to call an expert to analyze the trajectory evidence was appropriate because there was no showing that an expert was available. W.R.E. 702 guides the use of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.[2]

[¶25] Gregory Taylor, an investigator and former law enforcement officer trained in accident and crime scene reconstruction, testified for Mr. Cooper at the remand hearing. He discussed the relative location of the car to Mr. Cooper when he first shot, based upon the angles of the bullet holes in the windshield provided by law enforcement reports. Kirk's car was not available, but Mr. Taylor located a similar vehicle and took measurements to aid in his calculations. Based upon that information, he dispelled Kirk's

---

[2] If there is a challenge to proposed expert testimony, the district court uses the two-part *Daubert* test to determine its admissibility. *Stalcup v. State,* 2013 WY 114, ¶¶ 22-23, 311 P.3d 104, 110-11 (Wyo. 2013). Under the *Daubert* test, the court first determines whether the expert's methodology is reliable; secondly, it determines whether the proposed testimony is relevant, i.e. whether it fits the facts of the particular case. *Id.,* citing *Cooper v. State,* 2008 WY 5, ¶ 10, 174 P.3d 726, 729 (Wyo. 2008). No *Daubert* analysis was requested or performed in this case.

testimony that he was forty feet or more away when Mr. Cooper fired the first shot. Mr. Taylor stated that, if Mr. Cooper was truly 40 feet away as Kirk stated, Mr. Cooper would have had to shoot from nearly fourteen feet high for the bullet to impact the windshield at the angle it did.

[¶26] Mr. Taylor used Mr. Cooper's height and the trajectory information to calculate the first bullet as being shot forty-two inches from the windshield, or 2.4 inches past the front bumper. The second shot was made from twenty-two inches from the windshield, or 17.4 inches past the front bumper of the car. Therefore, according to Mr. Taylor, the car was so close when Mr. Cooper fired the first two shots that his hand was already over the hood of the car. The third shot occurred when he was on the vehicle hood after being hit. Mr. Taylor explained that the calculations were not difficult to make and such training is standard in Nebraska, where he was trained.

[¶27] Mr. Cooper's trial counsel stated that she knew the angles of the gunshots into the windshield were important because they were relevant to determining "where Mr. Cooper would have been in proximity to the vehicle when the gunshots were fired." She indicated the distance was important to Mr. Cooper's self-defense claim. Trial counsel testified that she consulted trajectory charts on the internet to make her own calculations of the distance. She made a tactical decision to forgo consulting an expert witness and to, instead, present the evidence regarding the distance between the car and Mr. Cooper through cross examination of the State's witnesses. She explained her rationale as follows:

> Q. . . . Did you consider retaining an expert or . . . a witness on behalf of your client who could make those calculations?
>
> A. Yes.
>
> Q. Okay. Did you contact anybody?
>
> A. No.
>
> Q. Any particular reason why?
>
> A. I made a decision after looking at all the statements and the evidence that an expert witness wouldn't have probably made any difference about the outcome of the case. All the witness statements were consistent with what happened. Mr. Cooper testified that he shot the gun prior to being hit by the automobile. The driver of the vehicle also testified to the same. And then all the – all the evidence and

7

exhibits [were] consistent, so there wasn't anything that was inconsistent in the statements that were made.

Defense counsel stated that she thought she had questioned the state's witness about the distances and angles.

[¶28] In fact, the evidence on the distances was not consistent, and Mr. Taylor testified that eye witnesses commonly make mistakes in estimating distances. Kirk testified that the car was forty to fifty feet from Mr. Cooper when he started firing. Mr. Davis testified that the car accelerated very quickly toward Mr. Cooper and the shots were fired when he was hit by the car. Mr. Cooper stated in his interview with Detective Dolberg that the car was no more than twenty feet away from him when he began shooting.

[¶29] Trial counsel's strategy to present the distance evidence through cross examination of the State's witnesses did not pan out. She apparently assumed the State would call the evidence technician who actually did the trajectory analysis, but it did not. When she questioned Detective Dolberg about the distances, he stated that he did not have any specific training in trajectory analysis and that he could not determine how close the vehicle was when Mr. Cooper fired the first two shots. In the end, none of the trial witnesses testified concerning the distance based upon the trajectory evidence.

[¶30] Despite this lack of evidence, Mr. Cooper's trial counsel attempted to discuss her own distance calculations during closing argument, but drew an objection:

> [Defense Counsel]: . . . Mr. Cooper shot close distance, you know, close. . . .
>
> [The prosecutor] says, oh, the trajectory means nothing, oh jeez, nothing. That's why there's no expert witness to talk about the trajectory, because we know what the trajectory means. . . . [W]e know it means he was close distance when he was shooting. We know what that means. 15 degrees, 27 degrees. At that angle the vehicle had to have been less than 8 feet away.
>
> [Prosecutor]: Judge, I'm going to object to that. There's absolutely no evidence in the record to support that.

The district court judge stated that he could not recall the evidence on specific distance calculations, so he was going to leave that matter to the jury.

[¶31] The prosecutor was correct; there was no such evidence in the record. He pointed that out in his rebuttal argument: "What counsel says is not evidence, period. Eight foot

8

at one point, talking about how far the car was away. There's not one witness that said eight foot. You can't stand here and say, I think it sounds pretty good so here it comes." Thus, not only was there no testimony to support the trajectory analysis and establish the actual distances, the lack of evidence was emphasized by defense counsel's improper argument using her own distance calculations rather than those of an expert.[3]

[¶32]   The State also claims that Mr. Taylor may not have been permitted to testify about his calculations because he made some assumptions in his analysis.   In particular, the State faults the proposed expert for assuming: 1) Mr. Cooper held the gun with two hands, when he could have held the gun with a single hand or sideways, resulting in different height calculations; and 2) the ground on which he was standing was flat. Experts typically are not fact witnesses in that they did not personally witness the event about which they are testifying.   In that respect, they have to rely upon the observations of others and data collected at the scene. *See* Wyoming Rules of Evidence 702 through 705.   In making their calculations, expert witnesses may have to make certain assumptions.   The validity of those assumptions is properly tested on cross examination, but the fact that assumptions are made does not make the opinions inadmissible. *See, e.g., Hermreck v. State,* 956 P.2d 335, 340 (Wyo. 1998).   Importantly, there is no indication that either the way Mr. Cooper held the gun or the slope of the ground could have accounted for the bullet being shot from nearly fourteen feet high.

[¶33]   The district court concluded that Mr. Taylor's testimony would have added little to the defense theory of self defense.   To the extent this is a finding of fact, we conclude it is clearly erroneous.   Expert testimony regarding the distances based upon the bullet trajectory evidence was available.   Defense counsel's plan to draw the evidence out on cross examination and through her own internet investigation did not work out and the jury was left with no explanation of the physical evidence regarding the relative distances between Mr. Cooper and the car.   Mr. Taylor's testimony would have filled this vital gap. We also disagree with the district court's conclusion that defense counsel's performance was adequate.   Our *de novo* review leads us to the inexorable conclusion that defense counsel's failure to consult an expert was not reasonable trial strategy and amounted to deficient performance.

[¶34]   In accordance with our standard of review, even after showing that counsel did not reasonably investigate or unreasonably failed to call an expert witness, a defendant still

---

[3] In *Hinton v. Alabama,* ___ U.S. ____, ____ S. Ct. _____, 2014 WL 684015 (February 24, 2014), the United States Supreme Court applied the *Strickland* analysis and concluded that defense counsel's performance was deficient when he failed to determine that more than $1,000 was available to hire an expert ballistics witness.   The only "expert" that defense counsel could locate who was willing to work for such a low fee was not well qualified, had difficulty operating the microscope, and had only one eye. *Id.* at *3-4, 6-7.   In comparison, defense counsel in this case did not make any effort to hire an expert and attempted to rely on her own calculations derived from an internet search.

must show that the deficient performance prejudiced him in order to prevail. *Osborne*, ¶ 20, 285 P.3d at 252. A defendant is prejudiced by deficient attorney performance when "a reasonable probability exists that, but for counsel's deficient performance, the outcome would have been different." *Osborne*, ¶ 19, 285 P.3d at 252. The State presented three reasons why Mr. Cooper was not prejudiced by defense counsel's actions: 1) the trajectory evidence could not have explained away the three shots Mr. Cooper fired from under the car; 2) the evidence did not explain why he did not retreat when the car drove toward him; and 3) it did not explain why he gave inconsistent statements to law enforcement. The district court agreed that these circumstances demonstrated that Mr. Cooper was not prejudiced by his defense counsel's performance.

[¶35] Reviewing the district court's conclusion *de novo*, we must disagree; the three cited circumstances did not cure the prejudice associated with the lack of expert trajectory evidence. The jury was instructed that the right to self defense ends when the danger ceases. The State's argument that he was not justified in firing the last three shots assumes that the danger had ended once Mr. Cooper was trapped under the car. The evidence established that Mr. Cooper was pinned between the car and a fence and Kirk refused to move the car off of him. It was up to the jury to decide whether Mr. Cooper was justified in feeling he was still in danger and needed to defend himself at that point.

[¶36] The question of whether or not Mr. Cooper should have retreated was, similarly, a jury question. Under § 6-2-502(a)(iii), a threat to use a drawn deadly weapon is excused if it is reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another. The issues involved with the reasonableness of Mr. Cooper's actions, and his possible obligation to retreat, were distinctly questions of fact. *See Drennen v. State,* 2013 WY 118, ¶¶ 40-43, 311 P.3d 116, 130-31 (Wyo. 2013).

[¶37] The jury was also charged with determining Mr. Cooper's credibility. It is true that he made inconsistent statements to law enforcement about shooting the gun and it was up to the jury to determine the significance of those statements. However, the inconsistent statements would not affect the physical evidence as explained by an expert witness, and that evidence would have been singularly helpful to his position that he acted in self defense. Under these circumstances, a reasonable probability exists that, but for trial counsel's deficient performance, the outcome would have been different. *Osborne,* ¶ 19, 285 P.3d at 252. Mr. Cooper is, therefore, entitled to a new trial.

### 3. *Self Defense Jury Instructions*

[¶38] When this Court reviews jury instructions, they "must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation." *Farmer v. State*, 2005 WY 162, ¶ 20, 124 P.3d 699, 706 (Wyo. 2005), quoting *Giles v. State*, 2004 WY 101, ¶ 14, 96 P.3d 1027, 1031 (Wyo. 2004). "As long as the

instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." *Id*.

[¶39] Mr. Cooper did not object to the instruction challenged on appeal; consequently, the plain error standard of review applies to this issue. *Bloomfield v. State*, 2010 WY 97, ¶ 9, 234 P.3d 366, 369 (Wyo. 2010). Plain error occurs when: "'1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him.'" *Kidwell v. State*, 2012 WY 91, ¶ 10, 279 P.3d 540, 543 (Wyo. 2012), quoting *Talley v. State*, 2007 WY 37, ¶ 9, 153 P.3d 256, 260 (Wyo. 2007).

[¶40] Mr. Cooper takes issue with Jury Instruction No. 18, which stated:

> Even if the defendant had reasonable ground[s] to believe and actually did believe that he was in imminent danger of death or serious bodily harm, the defendant was justified in using deadly force to repel the danger only if he retreated as far as he safely could do before using deadly force.
>
> The law requires a person to retreat rather than to take the life of an adversary if there was a convenient mode of retreat without increasing his actual or apparent peril. To excuse a failure to retreat, it is necessary that the defendant's peril would be increased, or that it reasonably appeared that it would be increased by retreat. If you find that the defendant could have safely retreated but failed to do so, the defendant cannot rely on the justification of self defense.

[¶41] According to Mr. Cooper, this instruction did not follow the statutory definition of self defense for threatening to use a drawn deadly weapon set out in § 6-2-205(a)(iii): "A person is guilty of aggravated assault and battery if he . . . [t]hreatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another[.]" Consistent with Mr. Cooper's position, we stated in *Drennen*, ¶¶ 40-43, 311 P.3d at 130-31, that the statutory language governs self defense in an aggravated assault case involving threatening to use a drawn deadly weapon.

[¶42] The State's argument on appeal focuses on the plain error standard of review, particularly that the district court did not violate a clear and unequivocal rule of law. However, at oral argument, the State seemed to acknowledge that the instruction did not comply with the law as set out in *Drennan, supra,* which was decided after the trial in

11

this case. Since we are reversing and remanding for a new trial because Mr. Cooper did not receive constitutionally effective counsel, we need not decide whether a clear and unequivocal rule of law was violated. We presume the jury instructions will be revised on retrial to be consistent with our statements of the law in *Drennen.*

[¶43] Reversed and remanded for proceedings consistent with this decision.